**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| ENVIRONMENTAL DEFENSE, | ) | |
| NORTH CAROLINA SIERRA CLUB, and | ) | |
| NORTH CAROLINA PUBLIC INTEREST | ) | |
| RESEARCH GROUP | ) | |
| | ) | |
|     Plaintiff-Intervenors, | ) | |
|     v. | ) | Civil Action No. 1:00 CV 1262 |
| | ) | |
| DUKE ENERGY CORPORATION | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

**Plaintiffs' Opposition to Duke Energy's Motion for Leave to File a Supplemental
Motion for Summary Judgment**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND AND STATEMENT OF RELEVANT FACTS ................................... 2

    1.  The United States Sued in 2000 to Require PSD Compliance, Remediation
        of the Harm from Duke's Violations, and Payment of Civil Penalties ............. 2

    2.  The Court Rejected Duke's Construction-Only View of PSD in a 2001
        Decision Granting Citizen Groups the Right to Intervene ................................ 3

    3.  The Court Again Rejected Duke's Construction-Only View of
        PSD in a 2003 Summary Judgment Decision ..................................................... 4

    4.  Duke Subsequently Conceded that the Ongoing Nature of its
        Alleged PSD Violations is the Law of the Case ................................................. 7

    5.  Duke's Present Motion ...................................................................................... 8

STANDARD ................................................................................................................. 8

ARGUMENT ............................................................................................................. 10

I.     The Factual Development Cited by Duke is Neither New Nor Sufficient
      to Reopen Summary Judgment .............................................................................. 10

      A. Duke's Request is Untimely ......................................................................... 10

     B. Duke's Request Ignores the Remedial Injunctive Relief
        Sought by Plaintiffs ...................................................................................... 11

II.    Duke's Selective Citation of Non-Controlling Cases from One Side of a Case Law
      Split Falls Far Short of the Showing Needed to Disturb the Law of the Case ...... 13

      A. Duke's Request is Untimely ......................................................................... 14

      B. Duke's Request Fails to Meet the Standard for Reopening
        the Law of the Case ...................................................................................... 15

      C. Duke Has Oversold the Holdings of its New Cases .......................................... 18

CONCLUSION ........................................................................................................... 20

## TABLE OF AUTHORITIES

### Federal Cases

*Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559 (M.D.N.C. 2005).................. 9, 14

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264
(7th Cir. 1996) ............................................................................................................ 10, 11

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988) ...............................8-9

*Columbus-Am. Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291
(4th Cir. 2000) .................................................................................................................... 18

*Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561 (2007) ...................................................7

*Louisiana v. United States*, 380 U.S. 145 (1965) ............................................................. 13

*Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288 (1960) ..................................... 13

*Nat'l Parks Conservation Ass'n v. TVA*, 480 F.3d 410 (6th Cir. 2007) (*NPCA-6*)........... 16

*Nat'l Parks Conservation Ass'n v. TVA*, 502 F.3d 1316
(11th Cir. 2007) (*NPCA-11*) ................................................................................ 8, 14, 19

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*,
322 F.3d 147 (2d Cir. 2003) ................................................................................................ 9

*Sierra Club v. Dairyland Power Coop.*, No. 10-cv-303-bbc, 2010 WL 4294622 (W.D.
Wis. Oct. 22, 2010)............................................................................................................ 17

*Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010) ..................... 8, 14, 19

*Sierra Club v. Portland Gen. Elec. Co.*, 663 F. Supp. 2d 983 (D. Or. 2009) ................... 17

*TFWS, Inc. v. Franchot*, 572 F.3d 186 (4th Cir. 2009) .......................................... 9, 15, 18

*United States v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060
(S.D. Ohio 2001) ...............................................................................................5-6, 15, 16

ii

*United States v. Aramony*, 166 F.3d 655 (4th Cir. 1999) ................................................. 8-9

*United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040 (D. Colo. 2012) ............................... 17

*United States v. Chevron U.S.A., Inc.*, 639 F. Supp. 770 (W.D. Tex. 1985) .................... 18

*United States v. Cinergy Corp.*, 582 F. Supp. 2d 1055 (S.D. Ind. 2008) ..................... 12-13

*United States v. Cinergy Corp.*, 618 F. Supp. 2d 942 (S.D. Ind. 2009) ....................... 2, 12

*United States v. Cinergy Corp.*, 623 F.3d 455 (7th Cir. 2010).......................................... 2

*United States v. Deaton*, 332 F.3d 698 (4th Cir. 2003) .................................................... 13

*United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560 (M.D.N.C. 2001) ................ 3-4

*United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619
(M.D.N.C. 2003)............................................................................................4-5, 6, 7, 18, 19

*United States v. Duke Energy Corp.*, 218 F.R.D. 468 (M.D.N.C. 2003) ..... 9-10, 11, 14-15

*United States v. E. Ky. Power Coop.*, 498 F. Supp. 2d 970 (E.D. Ky. 2007) ................... 17

*United States v. EME Homer City Generation, L.P.*, 727 F.3d 274
(3d Cir. 2013) ...................................................................................................8, 14, 19-20

*United States v. Holtzman*, 762 F.2d 720 (9th Cir. 1985) ................................................ 13

*United States v. La. Generating, LLC*, -- F. Supp. 2d --, 2011 WL 6012997 (M.D. La.
Dec. 1, 2011) ........................................................................................................... 16, 17

*United States v. La-Pac. Corp.*, 682 F. Supp. 1141 (D. Colo. 1988) ........................... 17-18

*United States v. Marine Shale Processors*, 81 F.3d 1329 (5th Cir. 1996) ...........5-6, 15, 17

*United States v. Midwest Generation, LLC*, 694 F. Supp. 2d 999 (N.D. Ill. 2010) .......... 20

*United States v. Midwest Generation, LLC*, 720 F.3d 644 (7th Cir. 2013)....... 8, 14, 19, 20

*United States v. Ohio Edison Co.*, No. 2:99-cv-1181, 2003 WL 23415140 (S.D. Ohio Jan.
17, 2003) ............................................................................................................ 5-6, 15-16

iii

*U.S. Pub. Interest Research Group v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23 (1st Cir. 2003) ........................................................................................................................ 13

## Federal Statutes

28 U.S.C. § 2462 ....................................................................................................... 4, 19

42 U.S.C. § 7410(j) ...................................................................................................... 19

42 U.S.C. § 7475(a)(4) ................................................................................................. 19

42 U.S.C. § 7477 ............................................................................................................ 4

42 U.S.C. § 7479(3) ................................................................................................... 2, 19

42 U.S.C. § 7602(k) ................................................................................................... 2, 19

42 U.S.C. § 7604 ............................................................................................................ 3

42 U.S.C. § 7604(a)(1) ................................................................................................... 3

42 U.S.C. § 7604(b)(1)(B) .............................................................................................. 3

42 U.S.C. § 7604(f) ...................................................................................................... 3-4

42 U.S.C. § 7604(f)(4) .................................................................................................... 3

## Federal Regulations

40 C.F.R. § 51.166(j)(1) ....................................................................................... 16-17, 19

40 C.F.R. § 51.166(j)(3) ......................................................................................... 16, 19

## Federal Rules

Fed. R. Civ. P. 24(a)(1) ................................................................................................. 3

iv

Plaintiff, the United States of America, and Plaintiff-Intervenors Environmental Defense *et al.*, jointly submit this Memorandum opposing Duke Energy Corporation's (Duke) Motion for Leave to File a Supplemental Motion for Summary Judgment.

## INTRODUCTION

Duke's motion seeks leave to reargue an issue that this Court has resolved twice: whether the Clean Air Act's Prevention of Significant Deterioration (PSD) provisions impose *only* construction obligations, and not operational ones. This Court thoroughly considered Duke's construction-only reading of the Clean Air Act in 2001 and 2003, and rejected Duke's view in written, published decisions. In 2007, years prior to its current filing, Duke itself recognized this Court's rulings as law of the case. Yet now, more than a year after briefing summary judgment on the merits of this case, Duke has asked the Court to reopen summary judgment to reconsider a twice-settled question.

According to Duke, this Court should abandon its earlier rejections of Duke's position and conclude that it is powerless to impose penalties or craft an injunction to remedy the harm from Duke's alleged PSD violations. Nothing Duke presents remotely justifies the extraordinary, and extraordinarily tardy, relief it seeks. There has been no change in controlling law and the case developments in other jurisdictions demonstrate, at most, that the split in authority earlier addressed by this Court continues to exist. Nor have any factual developments changed the legal calculus. Duke's motion is but a last minute attempt to avoid summary judgment, and its arguments should be rejected.

## BACKGROUND AND STATEMENT OF RELEVANT FACTS

1. <u>The United States Sued in 2000 to Require PSD Compliance, Remediation of the Harm from Duke's Violations, and Payment of Civil Penalties</u>

The United States sued Duke in 2000, seeking injunctive relief and penalties for Duke's violations of the PSD provisions of the Clean Air Act and its implementing rules. The violations include modifying, and thereafter operating, coal-fired power plants without obtaining PSD permits, and without operating those plants in compliance with PSD-mandated pollution limits. *E.g.*, Doc. # 1, ¶¶ 68-71. Such pollution limits are known as BACT limits.[1] The pollutants at issue are sulfur dioxide ($SO_2$), nitrogen oxide ($NO_x$), and particulate matter (PM). When emitted due to combustion of coal, $SO_2$ and $NO_x$ react with other substances to form acidic compounds, including sulfates and other small particles known as $PM_{2.5}$, and ozone. $SO_2$, $NO_x$, and such secondary compounds cause significant harm to human health and the environment. *United States v. Cinergy Corp.*, 618 F. Supp. 2d 942, 949-54 (S.D. Ind. 2009), *rev'd on other grounds*, 623 F.3d 455 (7th Cir. 2010); 70 Fed Reg. 25,162, 25,310 (May 12, 2005); Doc. # 1, ¶¶ 2-6.

The complaint seeks two types of injunctive relief. *First*, to achieve prospective compliance with the law, the complaint asks that Duke be ordered to obtain PSD permits

---

[1] BACT, or best available control technology, is not defined as a particular piece of equipment, but rather as an "emission limitation" set on a "case-by-case basis" taking into account various energy, environmental and economic factors. 42 U.S.C. § 7479(3). An "emission limitation" is in turn defined as a limitation that applies "on a continuous basis, including any requirement relating to the operation or maintenance of a source to assure continuous emission reduction...." *Id.* § 7602(k). By statutory mandate, the limit may not exceed the emissions allowed by, *inter alia*, any applicable new source performance standard established under section 7411 of the Act. *Id.* § 7479(3).

for each of its modified plants, and to comply with BACT. Doc. # 1, Prayer for Relief ¶¶ 1-3. *Second*, to remediate the harm from the excess pollution discharged into the environment each day that Duke failed to meet BACT emission limits, the complaint asks that Duke be ordered to "take other appropriate actions to remedy, mitigate, and offset the harm to public health and the environment caused by the violations." *Id.* at Prayer for Relief ¶ 5. The complaint also seeks civil penalties for each day that Duke operated without a PSD permit and without meeting BACT limits. *Id.* at Prayer for Relief ¶ 6.

### 2. The Court Rejected Duke's Construction-Only View of PSD in a 2001 Decision Granting Citizen Groups the Right to Intervene

Shortly after the United States filed its complaint, Environmental Defense *et al.* moved to intervene, claiming an unconditional right under Fed. R. Civ. P. 24(a)(1). *See* Doc. # 5. To support their argument, the citizens pointed to 42 U.S.C. § 7604. That section of the Clean Air Act establishes an unconditional right to intervene in any case in which the United States alleges a violation of an "emission standard or limitation," and goes on to define such an "emission standard or limitation" as including, *inter alia*, "any requirement to obtain a permit as a condition of operations." 42 U.S.C. § 7604(a)(1), (b)(1)(B), & (f)(4). The question before Judge Bullock, who then presided over the case, was thus whether modified plants must have PSD permits as a "condition of operations."

Answering this question required the Court to analyze the nature of the PSD permits Duke failed to obtain. Were they mere construction permits, as Duke contended, or would they also have constrained the operation of Duke's plants? As the Court put the issue, "Duke Energy contends that the permits it allegedly needed were 'construction

3

permits' rather than the permits required as 'condition[s] of operations' referred to in [42 U.S.C. § 7604(f)]." *United States v. Duke Energy Corp.*, 171 F. Supp. 2d 560, 563 (M.D.N.C. 2001) (alteration in original). The Court went on to reject Duke's argument. As the Court explained, PSD permits are not just construction permits. Rather, they include BACT limits that govern a plant's operation, and complying with BACT limits and obtaining a PSD permit are both a "condition of operations" for a modified plant:

> The process of obtaining a permit to modify a major emitting facility involves the determination of [BACT] for pollutants emitted by the particular facility…. The implementation of BACT is a condition of operation because the Administrator or State may bring an enforcement action seeking injunctive relief for the alleged failure to apply best available control technology. *See* 42 U.S.C. § 7477. Thus, the requirement of obtaining a construction permit amounts to a condition of operations. The permitting process involves the determination of BACT. Absent the proper implementation of BACT, an electrical generator may be enjoined from operating.

*Id.* at 563-64; *see also id.* at 565 ("Permits issued under the PSD provisions of the Clean Air Act set emission standards and limitations.")

    3. The Court Again Rejected Duke's Construction-Only View of PSD in a 2003
       Summary Judgment Decision

In 2003, the Court again addressed the nature of PSD, and again rejected Duke's contention that PSD is a mere construction program that imposes no ongoing requirements. This time, Duke pressed its construction-only view of PSD in the specific context of the five-year statute of limitations, 28 U.S.C. § 2462. Duke urged the Court to reject the reasoning of courts holding that PSD imposes ongoing obligations, and instead adopt a line of cases holding that "violations of preconstruction permitting requirements

4

occur when actual construction is commenced at the facility, and not at some later time."

*United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619, 649 (M.D.N.C. 2003).

The Court considered and rejected the reasoning of the line of cases relied upon by Duke. The Court found that those cases rested on a superficial analysis that failed to recognize that while the PSD *review* process must sensibly be performed prior to construction, the actual PSD *requirements* (such as BACT emission limits) govern a modified plant's post-construction operation. As the Court put it:

> These courts, however, focus on [the construction] aspects of the PSD permit process to the exclusion of the language in the statute stating that the PSD permit shall set forth emission limitations for that source following the construction activity. Yet this aspect of the PSD permitting process and compliance with these emission limitations is just as integral to achieving the objectives of PSD as the preconstruction analysis and review. Thus, facilities contemplating undergoing a modification must obtain a PSD permit prior to construction and, following construction, operate in accordance with the terms of that permit.

*Id.* at 650.[2]

Consistent with its 2001 holding, the Court went on to comprehensively analyze the nature of PSD permits and the BACT "emission limitation" requirement, and again held that "implementation of BACT is a condition of operation" for modified plants. *Id.* at 651. In so holding, the Court agreed with cases from the Fifth Circuit and the Southern District of Ohio, which also recognized that CAA preconstruction permits act as both construction and operating permits and that operating without such a permit is an ongoing violation. *Id.* (citing *United States v. Marine Shale Processors*, 81 F.3d 1329, 1355-56

---

[2]     As discussed *infra*, Duke's motion for leave merely cites four newer decisions in the same line of cases rejected by the Court in 2003.

5

(5th Cir. 1996), *United States v. Ohio Edison Co.*, No. 99-cv-1181, 2003 WL 23415140, at *12 (S.D. Ohio. Jan. 17, 2003), and *United States v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060, 1066 (S.D. Ohio 2001)). As the Court explained, imposing an ongoing obligation to comply with PSD requirements best reflects the reality of the PSD program, which governs both construction, *and subsequent operation*, of new and modified plants:

> [B]ecause the PSD permitting provisions provide both preconstruction obligations and subsequent obligations on operations, Duke Energy's alleged violation of failing to undergo the PSD permitting process does not terminate upon the completion of construction activity. The violation continues because each day that Duke Energy operates an allegedly modified plant and emits pollutants into the atmosphere, it may be in violation of the requirement to comply with the operation conditions, *i.e.*, the emission limitations, that would have been contained within a PSD permit had Duke Energy submitted to the permitting process.

*Id.* at 651. The Court thus squarely rejected Duke's argument that PSD violations simply vanish upon completion of construction of an illegal modification. Rather, to the extent Duke operated modified plants without a PSD permit and without meeting BACT "emission limits," the Court confirmed that Duke is liable for *per diem* penalties for each such day that falls within the five year statute of limitations. *Id.* at 651-53 & n.29.

Finally, while it rested its decision on the text, structure, and purpose of the Clean Air Act and PSD rules, the Court also identified the perverse incentive that would result from adopting Duke's argument, which would economically encourage non-compliance. As the Court explained, under Duke's view of the law, the magnitude of PSD penalties would be tied to how quickly a violator could complete its illegal construction activities, rather than how many days a modified plant actually emitted at levels exceeding the

6

required pollution limits. Thus, it could be cheaper to violate PSD and then litigate endlessly if caught operating without PSD controls, with no threat of an increasing fine:

> Duke Energy's position that a violation of PSD is a discrete act that occurs only as long as the construction would not achieve [the Clean Air Act's] objectives. Rather, it would convert the PSD program, which is aimed at protecting air quality, into the 'Prevention of Significant Delay in construction' program . . . . Because penalties could be accessed [sic] only according to the duration of unpermitted construction, it could in certain circumstances be more cost-effective to avoid the permit obligations altogether and, if challenged, litigate the claim endlessly with little incentive to settle and no downside risk of an increasing fine.

*Id*. at 652.

### 4. Duke Subsequently Conceded that the Ongoing Nature of its Alleged PSD Violations is the Law of the Case

In 2007, Duke conceded that the Court's 2003 ruling represented the law of the case with respect to the ongoing violation issue. In a brief addressing other aspects of the Supreme Court's decision in *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561 (2007), Duke stated the following with respect to the Court's ongoing violations ruling: "Although Duke respectfully disagrees with this ruling, Duke recognizes it is the law of the case." Duke Opp. to Motion to Vacate, at 3. n.2 [Doc. # 352].

Subsequently, the parties were ordered to file a joint report setting forth "the issues remaining in the case for decision by the Court." Mar. 22, 2011 Order [Doc. # 409]. In that report, Duke identified defenses it believed remained, but (consistent with its prior law of the case concession) did not include the statute of limitations. June 30, 2011 Report, at ¶ 13 [Doc. # 413]. The parties then filed briefs and each side moved for summary judgment. During the pendency of that briefing, Duke informed the Court that

7

the majority of its units had been or would be retired, but expressly stated that it agreed "this development does not moot the issues presented in the motions currently pending with the Court." Feb. 7, 2013 Letter to Chief Judge Osteen (attached as Ex. 1); *see* Duke Opp. to Motion for Summary Judgment, at 5, ¶ 11 [Doc. # 438].

5. Duke's Present Motion

On September 19, 2013, Duke filed a motion for leave to file a supplemental summary judgment motion. *See* Doc. No. 457. Duke says two "recent" developments justify its request: one factual and one legal. Factually, Duke says that it retired seven of its units in 2011, and four more units earlier this year, and that (contrary to the position it took during briefing) this fact now makes Plaintiffs' "claims for equitable relief moot" at those units. *Id.* at 2, 4. Legally, Duke says the Court's prior rejection of Duke's statute of limitations defense is contrary to "recent" decisions (issued between 2007 and 2013) from the Third, Seventh, Eighth, and Eleventh Circuits. *Id.* at 2-4.[3]

## STANDARD

Although district courts have discretion to revisit interlocutory decisions, various doctrines have developed to guide that discretion, including the law of the case doctrine. That doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *United States*

---

[3]     *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274 (3d Cir. 2013); *United States v. Midwest Generation LLC*, 720 F.3d 644 (7th Cir. 2013); *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010); *Nat'l Parks Conservation Ass'n v. TVA*, 502 F.3d 1316 (11th Cir. 2007) (*NPCA-11*).

8

*v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-17 (1988)). While not a straitjacket, the law of the case doctrine is recognized as a forceful presumption against revisiting issues already litigated and decided. Where "litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Akeva, L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005) (quoting *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 167 (2d Cir. 2003)). As the Supreme Court has instructed, courts should thus be "loathe" to revisit prior rulings "in the absence of extraordinary circumstances." *Christianson*, 486 U.S. at 817 (internal citations and quotations omitted).

Courts generally adhere to "a fairly narrow set of grounds on which to reconsider" their prior holdings, allowing such reconsideration only where "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Akeva*, 385 F. Supp. 2d at 565-66. Litigants seeking to show that the law of the case should be reconsidered for "clear error" must meet a very high burden. As the Fourth Circuit has explained, a "prior decision does not qualify for th[e] third exception [to the law of the case doctrine] by being just maybe or probably wrong; it must strike us as wrong with the force of a five-week-old, unrefrigerated dead fish. . . . It must be dead wrong." *TFWS Inc., v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (internal citations and quotations omitted); *see also United States v. Duke Energy Corp.*,

9

218 F.R.D. 468, 474 (M.D.N.C. 2003) ("[M]ere disagreement over the Court's legal analysis" is insufficient to warrant reconsideration).

## **ARGUMENT**

**I.    The Factual Development Cited by Duke is Neither New Nor Sufficient to Reopen Summary Judgment**

Duke says it has now retired most of its allegedly modified units, and that this factual development moots Plaintiffs' claims for equitable relief at those units.  Duke Motion, at 2, 4 [Doc. # 457].  Duke's argument fails for two reasons.

A. Duke's Request is Untimely

First, there is nothing new about the retirements, which occurred prior to and during the pendency of the briefing on the parties 2011 cross-motions for summary judgment.  *See* Duke Opp. to Motion for Summary Judgment, at 5, ¶ 11 [Doc. # 438]; Feb. 7, 2013 Letter to C.J. Osteen (Ex. 1).  If Duke believed that these retirements somehow negated Plaintiffs' claims, the time to make that argument was in 2011, when the Court ordered the parties to brief all remaining issues, not two years later, after several rounds of substantive briefing and oral argument on the pending summary judgment motions.  "A party seeking to defeat a motion for summary judgment is required to wheel out all its artillery to defeat it. . . .   Belated factual or legal attacks are viewed with great suspicion, and intentionally withholding essential facts for later use on reconsideration is flatly prohibited."  *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) (internal citations and quotation marks omitted);

10

*see Duke Energy*, 218 F.R.D. at 474 (reconsideration is inappropriate where "evidence is not new or previously unobtainable, but merely newly submitted.").

Rather than make such an argument, Duke instead actually informed the Court of the retirements in the summary judgment briefing (Doc. # 438 at 5, ¶ 11), and went on to explicitly agree with Plaintiffs that the retirements do "not moot the issues presented in the motions currently pending with the Court." Feb. 7, 2013 Letter to C.J. Osteen (Ex. 1). Because Duke declined to make its retirement argument in 2011, its attempt to reopen summary judgment now based on grounds that could have been raised earlier is "flatly prohibited." *Caisse Nationale*, 90 F.3d at 1270; *see Duke Energy*, 218 F.R.D. at 474 ("[A] party who fails to present his strongest case in the first instance generally has no right to raise new theories or arguments in a motion to reconsider.").

B. Duke's Request Ignores the Remedial Injunctive Relief Sought by Plaintiffs

Second, Duke's motion for leave fails to demonstrate good cause for reopening summary judgment, because it simply ignores the actual injunctive relief sought in this case. Among other things, Plaintiffs have asked this Court to order Duke to "remedy, mitigate, and offset the harm to public health and the environment caused by the violations." Doc. # 1, Prayer for Relief ¶ 5. Duke's retirement of some of its plants two decades after it modified them does nothing to remediate the harm from the enormous quantities of pollution that were discharged each day that Duke operated those plants

11

without meeting BACT limits.[4]  That pollution has already been discharged into the

environment and remains to be remediated.  Even if the retirement of some plants moots

the prospective need for a PSD permit and BACT limits at those plants, such retirements

do not moot the need for injunctive relief to redress the existing harm from the decades of

excess emissions already discharged into the environment from those plants.  Because

this case has been bifurcated into separate liability and remedy phases, the precise

amount of excess pollution discharged into the environment from Duke's plants, and how

to best remediate that harmful pollution, are issues that will be addressed after the Court

adjudicates Duke's liability.  But absolutely nothing about Duke's retirements moots

these remedial aspects of Plaintiffs' injunctive relief claims.  While the parameters of the

appropriate relief will be determined during the remedy phase, the power to craft such

remedial relief is well within the authority of this Court.  *United States v. Cinergy Corp.,*

582 F. Supp. 2d 1055, 1060-62 (S.D. Ind. 2008) (district courts have "the authority to

---

[4]      The amount of excess pollution is enormous, as can be shown by an example
using just one pollutant at one of the thirteen units at issue.  According to publicly
available information, Duke has deposited more than 50,000 tons of $SO_2$ into the
environment from Dan River Unit 3 since the time that unit was modernized and
restarted.  *See* Declaration of David Lloyd, at Table A (attached as Ex. 2).  Had Duke
installed and operated modern pollution controls for $SO_2$ (a technology known as flue gas
desulfurization, or FGD) at the same time it modernized the rest of the unit as part of the
"Plant Modernization Program," the amount of $SO_2$ pollution from the unit would have
been reduced on the order of 95% (*i.e.*, 2,500 tons of $SO_2$ would have been emitted from
the unit over the past two decades, rather than the approximately 50,000 tons actually
emitted).  *See id.* (51,293 tons of $SO_2$ emitted from Dan River Unit 3 between 1995 and
2011); *Cinergy*, 618 F. Supp. 2d at 955, 961 (FGDs in early 1990s were capable of
reducing $SO_2$ by 95%, while later FGDs were capable of even greater reductions).

12

order Defendants to take appropriate actions that remedy, mitigate and offset harms to the public and the environment caused by the Defendants' proven violations of the CAA").[5]

## II. Duke's Selective Citation of Non-Controlling Cases from One Side of a Case Law Split Falls Far Short of the Showing Needed to Disturb the Law of the Case

Duke also says there is a new legal development that warrants reopening of summary judgment briefing. It says that four "recent" decisions demonstrate a "consensus" position that PSD violations are "one-time" violations, and the Plaintiffs' claims for such past violations are thus barred. Duke Motion, at 2, 4 [Doc. # 457]. But the line of cases cited by Duke is not actually new. Indeed, two of the decisions actually pre-date the parties' 2011 summary judgment briefing, and all four are merely reiterations of the same construction-only line of cases that the Court already specifically rejected in this case.

---

[5]     *See Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 291-92 (1960) ("When Congress entrusts to an equity court the enforcement of prohibitions contained in a regulatory enactment, it must be taken to have acted cognizant of the historic power of equity to provide complete relief in the light of the statutory purposes"); *U.S. Pub. Interest Research Group. v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 31 (1st Cir. 2003) ("Conventionally, a court's equitable power to enforce a statute includes the power to provide remedies for past violations-an area in which the courts have settled authority and competence"); *United States v. Deaton*, 332 F.3d 698, 713-14 (4th Cir. 2003) (affirming district court order requiring defendant to do more than would have been required had it simply obtained a Clean Water Act permit before violation); *United States v. Holtzman*, 762 F.2d 720, 724-25 (9th Cir. 1985) (district courts have inherent equitable authority to "enjoin otherwise lawful activity when necessary and appropriate in the public interest to correct or dissipate the evil effects of past unlawful conduct."); *see also Louisiana v. United States*, 380 U.S. 145, 154 (1965) ("the court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future").

13

A.  Duke's Request is Untimely

First, just as with its argument concerning "recent" factual developments that really pre-dated the 2011 summary judgment briefing, this Court should decline Duke's invitation to reconsider the law of the case as untimely.  The 2007 and 2011 *NPCA-11* and *Otter Tail* decisions were issued prior to the filing of the parties' 2011 cross-motions for summary judgment, and even the more recent *Homer City* and *Midwest Generation* decisions simply applied the exact same superficial view of PSD contained in the prior cases to the particular facts of those cases.  *Midwest Generation*, 720 F.3d at 647 (adopting reasoning of *NPCA-11*, *Otter Tail,* and prior decisions in that line of cases, and applying it to claims at plants that had been modified by one owner but then sold to another entity prior to filing of a lawsuit); *Homer City*, 727 F.3d at 285-87 (same).

Thus, if Duke wished to try to somehow undo its 2007 concession (Doc. # 352, at 3 n.2) that the Court's statute of limitations decision is the law of the case, *at the very latest* the time to do so was in the 2011 summary judgment briefing, after the Court had ordered (Doc. # 409) the parties to identify and brief all remaining issues.  Duke did not do so.  Instead, it sought summary judgment on other grounds.  The parties have already "battled for the court's decision" on Duke's statute of limitations defense, *Akeva*, 385 F. Supp. 2d at 565, and, after conceding that the Court's decision represented the law of the case, and declining to brief the issue in 2011, Duke should not be rewarded with yet another bite at this thoroughly stale apple.  Duke conceded this Court's resolution of the issue was the law of the case, and focused its 2011 briefing on other issues, and thus "has

14

no right to raise new theories or arguments in a motion to reconsider." *Duke Energy*, 218 F.R.D. at 474; *see Caisse Nationale*, 90 F.3d at 1270.

B.  Duke's Request Fails to Meet the Standard for Reopening the Law of the Case

At any rate, Duke fails to show how its request for more briefing can meet the requirements of the law of the case doctrine.  There has been no change in controlling law, so Duke must show that the Court's prior rejection of its statute of limitations defense was "clearly erroneous and would work a manifest injustice."  *TFWS*, 572 F.3d at 194.  As the Fourth Circuit has explained, that is a very high burden.  To meet it and thus short circuit the normal appeal process, Duke must show that the Court's reasoning was not "just maybe or probably wrong" but rather "wrong with the force of a five-week-old, unrefrigerated dead fish," *i.e.*, "dead wrong."  *Id.*  Duke makes no attempt to explain how its request can meet this high standard.  Rather, Duke cites to four non-controlling decisions rehashing rationales that this Court has already rejected, and then just claims that these four decisions represent a clear "consensus" that this Court was wrong.

There is no such "consensus."  As there was a decade ago, there is a split in the case law.  Duke is simply ignoring an entire body of cases supporting the Court's reasoned rejection of Duke's view.  Duke fails to engage the cases cited in the Court's 2003 decision, including the Fifth Circuit's *Marine Shale* case and the Southern District of Ohio's *Ohio Edison* and *American Electric Power* cases.  *Marine Shale*, 81 F.3d at 1355-57 (rejecting statute of limitations defense and noting confusion caused by Clean Air Act's use of construction permits that also impose operating conditions); *Ohio*

*Edison*, 2003 WL 23415140 at *5-6 (rejecting statute of limitations defense because the "PSD provisions contemplate not only certain preconstruction obligations but also subsequent operation after the modification"); *Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d at 1066 (PSD "requirements clearly contemplate limitations on emissions that occur after a source is constructed or modified.").  But each of these cases remains good law.[6]

Moreover, numerous other decisions have been issued that support this Court's rejection of Duke's construction-only view of PSD.  For instance, the Sixth Circuit has held that there is an "ongoing obligation to apply BACT" at modified plants, and that the failure to operate such a plant in compliance with BACT gives rise to a "failing to apply BACT" violation that "manifests itself anew each day a plant operates."  *Nat'l Parks Conservation Ass'n v. TVA*, 480 F.3d 410, 418-19 (6th Cir. 2007) (*NPCA-6*).  The PSD regulatory provision relied on by the Sixth Circuit for this proposition stated that a "major modification *shall apply* best available control technology for any pollutant for which it would result in a significant net emissions increase at the source."  *Id.* at 418 (emphasis provided by Sixth Circuit).  The PSD rules applicable here (Doc. # 450) contain the same requirement that a major modification "shall apply" BACT.  40 C.F.R. § 51.166(j)(3).  In addition, they require that each "major modification *shall meet* each applicable *emissions*

_____

[6]      Although some courts have suggested that it is unclear whether *Marine Shale* involved construction or operating permits, the Fifth Circuit explained that while preconstruction permits are issued prior to construction, they also impose "limits upon a source's operations" and thus also function as operating permits.  81 F.3d at 1355-56. *Marine Shale* has thus been applied as "controlling" precedent in the Fifth Circuit on the issue of whether PSD violations are ongoing violations.  *United States v. La. Generating*, LLC, -- F. Supp. 2d --, 2011 WL 6012997, at *10-11 (M.D. La. Dec. 1, 2011).

16

*limitation* under the State Implementation Plan and each applicable emissions standard and standard of performance under 40 CFR part[] 60." *Id.* § 52.21(j)(1) (emphasis added). As this Court has already recognized, BACT is an "emission limitation."

Duke also ignores a raft of additional district court decisions that all support the Court's 2003 rejection of its statute of limitations defense. *See United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1048 (D. Colo. 2012) ("Given that the CAA is a statute intended to prevent emission of air pollution, the continued emission of pollutants that would otherwise be limited had the source complied with the PSD . . . program[] could be considered a repeated injury" that continues into the limitations period); *La. Generating*, 2011 WL 6012997, at *10-11 (applying *Marine Shale* and holding that the "statute of limitations for the claims under the CAA has not run"); *Sierra Club v. Dairyland Power Coop.*, No. 10-cv-303, 2010 WL 4294622, at *12-14 (W.D. Wis. Oct. 22, 2010) (because a PSD permit, unlike a "building permit," actually "imposes ongoing operational requirements that may be violated after construction is complete, a major source has an obligation to obtain a permit even after its construction is complete."); *Sierra Club v. Portland Gen. Elec. Co.*, 663 F. Supp. 2d 983, 993 (D. Or. 2009) ("The PSD program contemplates not only preconstruction requirements, but also ongoing operational requirements. . . . Failure to obtain a permit in the first instance does not relieve an operator of the Act's ongoing operational requirements."); *United States v. E. Ky. Power Coop.*, 498 F. Supp. 2d 970, 973-4 (E.D. Ky. 2007) ("shall apply" BACT requirement imposes a continuing obligation); *United States v. La.-Pac. Corp.*, 682 F.

17

Supp. 1141, 1166 (D. Colo. 1988) (PSD violation "began around November of 1986 and continues to the present time."); *United States v. Chevron U.S.A., Inc.*, 639 F. Supp. 770, 779 (W.D. Tex. 1985) (awarding *per diem* penalties for failure to obtain a PSD permit).

At the end of the day, the four cases that Duke says show a recent consensus that PSD violations are mere construction violations are just reiterations of the same split in rationale that this Court considered, and resolved, in 2003. The case law was split the last time the Court rejected this reasoning as superficial, *Duke Energy*, 278 F. Supp. 2d at 649-51, and it remains split today. Duke's selective citation of just one side of this non-controlling case law split is patently inadequate to demonstrate the extraordinary circumstances required by the law of the case doctrine. *TFWS*, 572 F.3d at 192-94 (rejecting reconsideration request despite intervening contrary decision from another circuit); *Columbus-Am. Discovery Group v. Atlantic Mut. Ins. Co.*, 203 F.3d 291, 303-05 (4th Cir. 2000) (declining to reconsider law of the case despite subsequent contrary case law from other circuits). Rather, Duke is simply rehashing its previously-rejected arguments, merely swapping out newer decisions for the older ones in the same construction-only line of cases that the Court already rejected.

C. <u>Duke Has Oversold the Holdings of its New Cases</u>

While Duke has failed to show that good cause exists for reopening briefing on an issue that has already been established as the law of the case, it is worth noting that Duke's new cases do not, in any event, support Duke's broad claim that Plaintiffs' equitable claims could be barred if the Court were to reopen briefing. The four cases do

18

stand for the proposition – rejected by this Court and the other courts discussed above – that the statute of limitations can bar penalties where modifications are constructed more than five years prior to filing of a compliant.[7]  But, contrary to Duke's assertion, they do not stand for the proposition that Plaintiffs' equitable claims can be barred as well.

For instance, *NPCA-11* specifically recognized that even under a construction-only view of PSD, claims for injunctive relief brought by the United States are *not* barred by 28 U.S.C. § 2462, which by its plain terms only covers penalties.  *See* 502 F.3d at 1326-27 (explaining that the concurrent remedy doctrine may bar claims by private parties, but does not bar injunctive "claims brought by the federal government in its sovereign capacity as enforcer of environmental regulations") (internal quotations omitted).  The *Otter Tail* decision is also distinguishable in that it included no claims brought by the United States.  *See* 615 F.3d at 1019 (applying concurrent remedy doctrine).  And, contrary to Duke's suggestion that *Homer City* held that the statute of limitations bars injunctive relief after five years, here is what that the court actually said:

---

[7]     Plaintiffs dispute these courts' non-operational characterization of PSD, for the reasons set forth in the Court's 2001 and 2003 decisions and Plaintiffs' prior briefing. That characterization ignores the Act's definition of "emissions limitation," 42 U.S.C. § 7602(k) and the statute's discussion of permit conditions, *id.* § 7410(j), both of which expressly describe "continuous" operational obligations.  *See also id.* §§ 7475(a)(4), 7479(3).  It also ignores the regulatory requirements to "apply" and "meet" such emission limitations.  40 C.F.R. § 51.166(j)(1), (3).  Indeed, because the statute defines BACT as an "emission limitation" it is nonsensical to say, as these courts say, that an operator can comply with the statutory BACT requirement by "install[ing] the best available control technology" and then "rip[ing] [it] out or deactivat[ing]" it.  *Midwest Generation*, 720 F.3d at 647.  Rather, as this Court has recognized, BACT is an "emission limitation." *Duke Energy*, 278 F. Supp. 2d at 561.  Because BACT is an "emission limitation" rather than a piece of equipment, it is not the sort of thing that can even *be* "ripped out."

19

If the EPA does not object within five years of the completion of a facility's modification, *then it loses the right to seek civil penalties under the statute of limitations, but can still obtain an injunction requiring the owner or operator to comply with the PSD requirements*.  But when more than five years have passed since the end of construction and the facility has been taken over by new owners and operators, the Clean Air Act protects their reasonable investment expectations.

727 F.3d at 289 (emphasis added).

The *Homer City* court's denial of certain injunctive relief in that case thus pertained to claims against a former owner who had since sold the plant, and a current owner who had not actually been the one to modify the plant.  That holding is inapposite to the situation here, where Duke itself modified and then operated its plants through the time of the lawsuit.  The *Midwest Generation* case dealt with a similar change in ownership and is thus similarly inapposite.  Indeed, the district court in that case, in a portion of its decision that was not part of the appeal, specifically allowed a claim for injunctive relief at a plant that was allegedly modified by the current owner, even though that modification occurred more than five years prior to the complaint.  *United States v. Midwest Generation, LLC*, 694 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("because Plaintiffs have alleged that Midwest Generation itself constructed major modifications on its Will County plant without first obtaining a PSD permit … Plaintiffs may seek injunctive relief on [this claim]"); *Midwest Generation*, 720 F.3d at 646 ("Claims concerning another plant remain pending").

## CONCLUSION

For the foregoing reasons, the Court should deny Duke's Motion for Leave to Reopen Summary Judgment briefing.

20

DATED: October 31, 2013.

Respectfully Submitted,

ROBERT G. DREHER
Acting Assistant Attorney General
Environment and Natural Resources
  Division
United States Department of Justice

*/s/ Jason A. Dunn*_____
JASON A. DUNN
RICHARD M. GLADSTEIN
JAMES A. LOFTON
ELIAS QUINN
OF COUNSEL:                    Environmental Enforcement Section
                               Environment and Natural Resources
ELLEN ROUCH                      Division
Associate Regional Counsel     P.O. Box 7611
U.S. EPA, Region 4             Washington, D.C. 20044-7611
61 Forsyth Street, S.W.        (202) 514-1111
Atlanta, Georgia  30303        jason.dunn@usdoj.gov

SEEMA KAKADE
Attorney Advisor
Air Enforcement Division       LYNNE KLAUER
Office of Enforcement and      Assistant U.S. Attorney
        Compliance Assurance   NCSB # 13815
U.S. EPA                       101 S. Edgeworth St., Fourth Fl.
1200 Pennsylvania Ave., N.W.   Greensboro, NC 27401
Washington, D.C. 20460         (336) 333-5351


                               J. BLANDING HOLMAN, IV
                               N.C. Bar No. 23184
                               Counsel for Plaintiff-Intervenors
                                 Environmental Defense et al.
                               Southern Environmental Law Center
                               43 Broad Street, Suite 300
                               Charleston, South Carolina, 29401
                               (843) 720-5270

21

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2013, the foregoing Opposition to Duke's Motion for Leave was filed electronically using the Court's ECF system and automatically served through the Court's ECF system on counsel of record.

*/s/ Jason A. Dunn*
Jason A. Dunn