IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| ENVIRONMENTAL DEFENSE, NORTH CAROLINA SIERRA CLUB, and NORTH CAROLINA PUBLIC INTEREST RESEARCH GROUP, | ) ) ) ) ) | |
| Plaintiff-Intervenors, | ) ) | |
| v. | ) ) | 1:00CV1262 |
| DUKE ENERGY CORPORATION, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This matter is before the court on Defendant Duke Energy Corporation's Motion for Leave to File Supplemental Motion for Summary Judgment ("Duke's Mot.") (Doc. 457). Duke filed this motion nearly two years after both parties filed cross-motions for summary judgment, asserting three justifications for re-opening summary judgment briefing: (1) that recent developments in case law demonstrate that this court's 2003 decision regarding the applicability of the statute of limitations was incorrect, (2) that Duke's ongoing retirement of certain power plants at issue in this case renders moot the

Government's claims for equitable relief, and (3) that recent case law prohibits the Government from obtaining equitable relief for the types of violations at issue, regardless of the mootness issue.[1] (Id. at 2-3.) After careful consideration of the parties' written briefs as well as the oral arguments presented at the April 4, 2014 hearing, the court concludes that Duke's motion should be denied for the reasons set forth below.

## I. RELEVANT CASE HISTORY

As detailed many times over in the various orders, pleadings, and motions spanning its fourteen-year history, this case arises from Duke's alleged failure to obtain required permits prior to making certain statutorily-defined "modifications" to some of its coal-fired power plants. See, e.g., United States v. Duke Energy Corp. ("Duke IV"), No. 1:00CV1262, 2010 WL 3023517, at *1 (M.D.N.C. July 28, 2010). The

---

[1] Clearly, the fact that Duke has begun to retire and decommission a number of the plants at issue in the case may affect the remedies available to Plaintiffs. However, Duke admits that it has no plans to retire at least two plants at issue, see Duke's Mot. (Doc. 457) at 5, such that any application of the mootness doctrine based on changed factual circumstances will not dispose of the entire case. Additionally, because this case has been bifurcated into liability and remedies stages, this court will refrain from addressing Duke's legal arguments regarding the availability of equitable relief until the liability stage is concluded. Therefore, the remainder of this order only discusses Duke's argument that this court should revisit its 2003 ruling regarding the non-applicability of the statute of limitations.

relevant permitting requirements, which come from the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act ("CAA"), "require[] a utility to obtain a pre-construction permit when proposed changes 'would increase the actual annual emission of a pollutant above the actual average for the two prior years.'" Id. at *5 (quoting Envtl. Def. v. Duke Energy Corp. ("Duke III"), 549 U.S. 561, 570 (2007)).

Because "[t]he CAA does not provide a specific statute of limitations applicable to alleged violations of its provisions[,] . . . [t]he general federal statute of limitations for civil enforcement actions applies." United States v. Duke Energy Corp. ("Duke I"), 278 F. Supp. 2d 619, 649 (M.D.N.C. 2003), aff'd on other grounds, 411 F.3d 539 (4th Cir. 2005), judgment vacated sub nom. Envtl. Def. v. Duke Energy, 549 U.S. 561 (2007). This statute provides that "an action . . . for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." Id. (quoting 28 U.S.C. § 2462 (1994)) (internal quotation marks omitted). Duke, noting that the Government did not file suit until 2000 and that all of the claims based on alleged PSD violations accruing after 1994 have been voluntarily dismissed (see Stipulation of Dismissal of Certain Claims and Defenses

(Doc. 418)), argues that this five-year statute of limitations consequently bars any remaining claims. (See Duke's Mot. (Doc. 457) at 3.)[2]

The concern with Duke's argument, however, is that another district court rejected it over ten years ago when Duke raised it for the first time. (See generally Duke's Motions for Partial Judgment on the Pleadings (Docs. 22 and 37); Order and Judgment (Doc. 235).) Duke, emphasizing the language of the statute of limitations that a claim is barred five years from the date it "first accrue[d]," asserted "that violations of [the PSD] preconstruction permitting requirements occur when actual construction is commenced at the facility, and not at some later time." Duke I, 278 F. Supp. 2d at 649. Therefore, Duke claimed, "any civil penalties arising from modifications commenced before December 22, 1995 [i.e., more than five years before the filing of the Complaint] are time barred." Id. at 650. The Government disagreed with Duke's characterization of the violations, arguing that Duke's failure to obtain a permit was not a one-time violation, but a continuing violation not encompassed by the statute of limitations. Id. at 649.

---

[2] All citations in this Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

The Duke I court sided with the Government, reasoning that the PSD preconstruction permits, had Duke obtained them, would have "set forth emission limitations for [each plant] following the construction activity" and subsequently required Duke to "operate in accordance with the terms of that permit." Id. at 650. The Duke I court further reasoned that:

> [B]ecause the PSD permitting provisions provide both preconstruction obligations and subsequent obligations on operations, Duke Energy's alleged violation of failing to undergo the PSD permitting process does not terminate upon the completion of construction activity. The violation continues because each day that Duke Energy operates an allegedly modified plant and emits pollutants into the atmosphere, it may be in violation of the requirement to comply with the operation conditions, i.e., the emission limitations, that would have been contained within a PSD permit had Duke Energy submitted to the permitting process.

Id. at 651. See also United States v. Marine Shale Processors, 81 F.3d 1329, 1355-56 (5th Cir. 1996); United States v. Ohio Edison Co., No. 2:99-cv-1181, 2003 WL 23415140, at *6 (S.D. Ohio Jan. 17, 2003); United States v. Am. Elec. Power Serv. Corp, 137 F. Supp. 2d 1060, 1066 (S.D. Ohio 2001).

As Duke points out, however, four Courts of Appeals have since found that failure to obtain a PSD preconstruction permit is a one-time violation – a conclusion contrary to the Duke I court's opinion. See United States v. EME Homer City Generation, 727 F.3d 274 (3d Cir. 2013); United States v. Midwest Generation, LLC, 720 F.3d 644 (7th Cir. 2013); Sierra Club v.

Otter Tail Power, Co., 615 F.3d 1008 (8th Cir. 2010); Nat'l Parks and Conservation Ass'n v. Tenn. Valley Auth., 502 F.3d 1316 (11th Cir. 2007). All four of these cases employ substantially the same basic reasoning. First, they note that the plain language of the PSD statute prohibits "construction" or "modification" of a facility without obtaining the required permits, but is silent on the issue of "operation." See, e.g., EME Homer City, 727 F.3d at 284. Additionally, they emphasize that the CAA contains a separate operating permit requirement above and beyond the PSD preconstruction permit requirements, making it unlikely that Congress intended for the preconstruction permit to act as an operating permit, as well. See id. at 285. Finally, they observe that the PSD enforcement mechanisms do not appear to allow a remedy for operation without a preconstruction permit. See id. at 285 ("Nowhere do these [preconstruction permit] provisions authorize enforcement against a person who 'operates' a source without satisfying applicable PSD requirements."). Suffice it to say that each of these Courts of Appeals considered and rejected reasoning substantially similar to that employed by the district court in its 2003 ruling. See, e.g., id. at 286 ("The [Government's] argument is simple: obtaining a PSD permit is a condition of operating a source because PSD permits impose some operational

conditions on the sources they govern. . . . But Ockham's Razor reminds us that simplicity in argument, without more, is no barometer of merit.").

This court finds the decisions of these Courts of Appeals well-reasoned, and cannot say definitively that the Duke I court would not have been persuaded by them had they existed ten years ago. Nevertheless, this court will decline Duke's invitation to re-address the statute of limitations question because the doctrine of law of the case counsels heavily against such a reconsideration.

## II.  LAW OF THE CASE DOCTRINE

Even though "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted[,]" Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) (internal citations omitted), "[t]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case,'" TFWS, Inc. v. Franchot, 572 F.3d 186, 191 (4th Cir. 2009) (citing United States v. Aramony, 166 F.3d 655, 661 (4th Cir. 1999)). This doctrine "is designed to serve the goals of finality and predictability in the trial court[,] . . . [but] is

neither absolute nor inflexible; it is a rule of discretion rather than a jurisdictional requirement."[3] Walker v. S.W.I.F.T. SCRL, 517 F. Supp. 2d 801, 807-08 (E.D. Va. 2007) (citing Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir. 1987)). Nevertheless, the rule will apply "unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work

---

[3] As the Fourth Circuit has stated, "it bears observing that whether rulings by one district judge become binding as 'law of the case' upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not." Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n.3 (4th Cir. 1982) (citing Gallimore v. Missouri Pac. R.R. Co., 635 F.2d 1165 (5th Cir. 1981)).

manifest injustice."[4] TFWS, 572 F.3d at 191 (internal citation and quotation marks omitted); accord Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988).

In its supplemental briefing, Duke argues that this three-circumstance test applies only "<u>after</u> the court of appeals has [established the law of the case,]" and does not apply when a district court is asked to reconsider its own prior decision. (Def.'s Supplemental Br. in Supp. of Mot. for Leave to File

---

[4] Where an order is not final and does not resolve all claims, such as in the case of entry of partial summary judgment, a motion for reconsideration of the order, interlocutory in nature, is subject to Rule 54(b) of the Federal Rules of Civil Procedure, not the heightened standards of Rule 59(e) or 60(b). Am. Canoe, 326 F.3d at 514-15. Even so, "[a]lthough Rules 59(e) and 60(b) do not govern reconsideration of an interlocutory order, the Fourth Circuit has suggested that at least parts of those rules may guide a court's analysis." Saint Annes Dev. Co. v. Trabich, Civil No. WDQ-07-1056, 2012 WL 135281, at *3 (D. Md. Jan. 13, 2012) (citing Am. Canoe, 326 F.3d at 514)).

"[T]he standard of review for exceptions to the law of the case doctrine is substantially the same as the standard applicable to [Fed. R. Civ. P.] 59(e) motions [to alter or amend a judgment]." Brooks v. GAF Materials Corp., 284 F.R.D. 352, 356 n.1 (D.S.C. 2012), amended in part, Civil Action No. 8:11-cv-00983-JMC, 2012 WL 5195982 (D.S.C. Oct. 19, 2012), clarified on denial of reconsideration, Civil Action No. 8:11-CV-00983-JMC, 2013 WL 461468 (D.S.C. Feb. 6, 2013). Because of this similarity, this court will also look to Rule 59(e) cases for guidance on how to apply each of the three exceptions to the law of the case doctrine. See, e.g., Bogart v. Chapell, 396 F.3d 548, 555 (4th Cir. 2005) ("As we have observed, a court may grant a Rule 59 motion in three circumstances: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." (internal citations and quotation marks omitted)).

Supplemental Mot. for Summ. J. ("Duke's Supp. Br.") (Doc. 470) at 4.) Duke then points to general policy statements and other declarations purporting to support a more lenient standard for district courts, but certain of Duke's cited cases actually undermine its argument. Compare Duke's Supp. Br. (Doc. 470) at 5 n.2 ("Thus, the [three-circumstance] standard . . . relied upon by plaintiffs is controlling only after an appellate decision has narrowed the district court's ordinarily 'broad discretion to reconsider interlocutory orders.'" (citing Am. Canoe, 326 F.3d at 515)) with Am. Canoe, 326 F.3d at 515 (noting that "doctrines such as law of the case . . . have evolved as a means of guiding [a district court's] discretion" and listing the three circumstances noted above (citing Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988))). Rather than suggesting a different standard for district courts reconsidering their own prior decisions, the cases Duke cites merely confirm what has already been said: that the law of the case doctrine "is a rule of discretion rather than a jurisdictional requirement." Walker, 517 F. Supp. 2d at 807-08.

To be sure, the issue often arises after an appellate court establishes the law of the case for both the district court and itself. See, e.g., TFWS, 572 F.3d at 191 ("As a practical matter, then, once the decision of an appellate court

- 10 -

establishes the law of the case . . . ."). Significantly, however, in American Canoe the Fourth Circuit spoke of the law of the case doctrine and application of the three circumstances in the context of "a district court retain[ing] the power to reconsider and modify its interlocutory judgments, including partial summary judgment, at any time prior to final judgment when such is warranted." Am. Canoe, 326 F.3d at 514-15 (emphasis added).[5] Thus, this court will rule on Duke's motion by

---

[5] District courts in the Fourth Circuit routinely employ the three circumstances analysis to their own interlocutory orders. E.g., Long v. O'Reilly's Auto. Stores, Inc., Civil Action No. 6:12-901-MGL, 2014 WL 2864589, at *2 (D.S.C. June 23, 2014) (listing three circumstances in discussing evaluation of motion for reconsideration under Rule 54(b)); Va. Innovations Sciences, Inc. v. Samsung Elecs. Co., 983 F. Supp. 2d 713, 761-62 (E.D. Va. 2014) (following Am. Canoe); Brooks v. Barney, Civil Action No. 3:13-CV-168, 2013 WL 6712847, at *1 (N.D.W. Va. Dec. 18, 2013) (quoting Am. Canoe); Boyd v. Coventry Health Care Inc., 828 F. Supp. 2d 809, 813-14 (D. Md. 2011) (same); Akeva, L.L.C. v. Adidas Am., Inc., 385 F. Supp. 2d 559, 555-56 (M.D.N.C. 2005); see Louisville/Jefferson Cnty. Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 389 (6th Cir. 2009) (describing the three circumstances analysis as providing grounds upon which "courts will find justification for reconsidering interlocutory orders"); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (noting that, in applying Rule 54(b), prior interlocutory decisions "may not usually be changed unless there is an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice" (internal citations and quotations omitted)); but see Saqui v. Pride Cent. Am., LLC, 595 F.3d 206, 210-11 (5th Cir. 2010) (concluding district court is "free to reconsider and reverse its [interlocutory] decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law").

referencing the three circumstances outlined above.

### A. New Evidence

Duke's argument that the court should reconsider the Duke I decision rests entirely on intervening developments in case law. Duke does not argue, for instance, that in Duke I, the court had an incomplete picture of the facts relating to the statute of limitations – i.e., the plant modification schedule or the date the Complaint was filed. Therefore, this exception to the law of the case doctrine is inapplicable.[6]

### B. Change in Controlling Authority

The parties agree that the Fourth Circuit has yet to consider the question of whether failure to obtain a PSD preconstruction permit under the CAA is a one-time or continuing violation. Therefore, this exception to the law of the case doctrine is also inapplicable.

---

[6] In its Supplemental Brief in Support of its Motion for Leave to File Supplemental Motion for Summary Judgment (Doc. 470), Duke argues that "the decommissioning of the plants in question is significant new evidence which was not available in 2003." (Id. at 8.) While this "evidence" may bear on the question of available remedies, discussed in note 1, supra, it is irrelevant to the question of whether this court should revisit the Duke I decision regarding the statute of limitations.

## C. Clear Error or Manifest Injustice

### 1. Clear Error

Duke urges us to find that "[t]he developments in the case law since 2003 show [the Duke I] decision to be clearly erroneous." (Duke's Mot. (Doc. 457) at 3.) "Clear error occurs when we are 'left with the definite and firm conviction that a mistake has been committed.'" United States v. Woods, 477 F. App'x 28, 29 (4th Cir. 2012) cert. denied, ____ U.S. ____, 133 S. Ct. 965 (2013) (citing United States v. Harvey, 532 F.3d 326, 336 (4th Cir. 2008)).

As discussed supra, this court is impressed with the reasoning employed by the Courts of Appeals who have determined that failure to obtain a PSD preconstruction permit is a one-time violation. The statutory interpretation in those cases is straightforward and typical, and makes intuitive sense. See supra at 5-6. However, this court also finds the Duke I decision to be well-reasoned and defensible, particularly in light of the fact that several other courts have recently recognized or adopted the same reasoning and concluded that failure to obtain a PSD preconstruction permit is a continuing violation. See United States v. Cemex, Inc., 864 F. Supp. 2d 1040, 1048 (D. Colo. 2012) ("Given that the CAA is a statute intended to prevent emission of air pollution, the continued emission of

pollutants that would otherwise be limited had the source complied with the PSD and NNSR [Non-attainment New Source Review] programs could be considered a repeated injury."); Sierra Club v. Portland Gen. Elec. Co., 663 F. Supp. 2d 983, 993 (D. Or. 2009) ("Because [the Title V] program contains operational requirements does not mean that the [PSD preconstruction] program must lack similar requirements. As discussed above, the language of both the federal and Oregon PSD programs create ongoing operational requirements."); Sierra Club v. Dayton Power & Light, Inc., No. 2:04 CV 905, 2005 WL 1972549, *3 (S.D. Ohio Aug. 12, 2005) ("[T]he Court finds it illogical to conclude that a defendant may only be held liable for constructing a facility, rather than operating such facility, without complying with the permit requirements."); cf. Nat'l Parks Conservation Ass'n v. Tenn. Valley Auth., 480 F.3d 410, 419 (6th Cir. 2007) (holding, while interpreting a Tennessee regulation with substantially the same language as the PSD regulations applicable in this case, that failure to obtain a preconstruction permit constitutes a recurrent violation for each day the plant operates without one, even post-construction).

The analysis as to whether operation is a recurring violation is further complicated by the fact that the portion of

the CAA requiring preconstruction permits was implemented in 1977, while the portion requiring operating permits was implemented in 1990. In those intervening years,

> [C]itizens, regulators, and even the owners and operators of pollution sources had difficulty knowing which of the Clean Air Act's many requirements applied to a particular pollution source. . . . [T]he only [operational] requirements easily discoverable were those expressly listed in the preconstruction permits issued under the New Source Review program; any other applicable requirements under the Clean Air Act were scattered among separate records, permits, and other documents, if they were recorded at all.

EME Homer City, 727 F.3d at 280 (citing Sierra Club v. Johnson, 541 F.3d 1257, 1261 (11th Cir. 2008)).

There is an argument, therefore, that until the 1990 CAA amendments, the preconstruction permits acted as de facto operation permits, setting forth emissions and operational limits established during the permitting application process. See, e.g., 40 C.F.R. § 51.24(k) (1981) (requiring the owner or operator of a modified plant to "demonstrate that allowable emission increases from the proposed source or modification . . . would not cause or contribute to air pollution . . . ."); id. § 51.24(m)(2) (obligating an owner or operator to "conduct [post-construction] ambient monitoring . . . to determine the effect emissions from the . . . modification may have, or are having, on air quality in any area"); id. § 51.24(n)(2)(i) & 15 N.C. Admin Code 2D.0530(g) (see Doc. 450-1)(permitting North

Carolina to require the preconstruction permit application to contain "[a] description of the nature, location, design capacity, and typical operating schedule of the source or modification . . . .").[7]

Because Duke I's conclusion is not only defensible, but has been shared by a number of other courts over the past decade, and because the patchwork history of the CAA offers no definitive answer, this court cannot find that the court in Duke I made a clear error of law in ruling that Duke's alleged failure to obtain a PSD preconstruction permit constitutes a continuing violation.

### 2. Manifest Injustice

A few courts have defined the term "manifest injustice," which also appears in Rule 59(e), as "an error by the court that is direct, obvious, and observable." See Smith v. Waverly Partners, LLC, No. 3:10-CV-28, 2011 WL 3564427, at *3 (W.D.N.C. Aug. 12, 2011) ("In the context of a motion to reconsider,

---

[7] The parties agree that this case is governed by the 1980 PSD rules incorporated in North Carolina's State Implementation Plan at 15 N.C. Admin. Code 2D.0530 at the time of the alleged modifications. (Joint Response (Doc. 450) at 3.) The parties also agree that the 1987 version of 40 C.F.R. § 51.166 (Doc. 450-3) subsequently incorporated into North Carolina's SIP contains no material differences from 40 C.F.R. § 51.24 (1981) (Doc. 450-2). (Id.) The North Carolina SIP, in the form of a mark-up showing the transition from section 51.24 to 51.166, is set out in Doc. 450-1.

manifest injustice is defined as 'an error by the court that is direct, obvious, and observable.'") (quoting Register v. Cameron & Barkley Co., 481 F. Supp. 2d 479, 480 n.1 (D.S.C. 2007)). Courts have applied the "direct, obvious, and observable" definition to a motion for reconsideration of interlocutory orders. E.g., Harper v. Norfolk S. Ry. Co., 992 F. Supp. 2d 795, 810 (S.D. Ohio 2014). The language reflects that found in Black's Law Dictionary, which defines "manifest injustice," in relevant part, as "[a] direct, obvious, and observable error in a trial court." Black's Law Dictionary 1048 (9th ed. 2009). For all practical purposes in this case, this definition mimics the definition of "clear error," discussed supra, so this court

will apply the same analysis and reach the same conclusion.[8]

### III. CONCLUSION

This court is well aware that "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law[,]" regardless of the applicability of the law of the case doctrine. Am. Canoe, 326 F.3d at 515. However, as outlined above, this court does not find that Judge Bullock's previous ruling on this issue in Duke I has been controverted by subsequent controlling law, that new evidence has emerged to undercut its legitimacy, or that maintaining it would be clear error or work a manifest injustice on any parties to this case.

---

[8] This court also notes that two of the four Courts of Appeals' cases cited by Duke in support of its motion were decided prior to the parties' 2011 filing of cross-motions for summary judgment, and that Duke had ample opportunity to include these cases and a motion for reconsideration in its briefing at that time. See Sierra Club, 615 F.3d 1008 (8th Cir. 2010); Nat'l Parks and Conservation Ass'n, 502 F.3d 1316 (11th Cir. 2007). As the Government points out, the more recent cases in Duke's favor, EME Homer City, 727 F.3d 274 (3d Cir. 2013), and Midwest Generation, LLC, 720 F.3d 644 (7th Cir. 2013), do not offer any unique analysis of the statute of limitations question; instead, they merely adopt the analysis of the prior Courts of Appeals' cases. (See, e.g., Pls.' Opp'n to Def.'s Mot. for Leave to File Supplemental Mot. for Summ. J. (Doc. 461) at 14.) This court fails to see how the issuance of two more non-controlling opinions adopting Duke's position creates a "manifest injustice" that did not exist back in 2011, and further observes that Duke's delay in revitalizing this argument, while not evidence of bad faith, undercuts any argument that Duke suffered manifest injustice as a result of the Duke I ruling.

The court has also been mindful that this obligation is especially true in the context of subject matter jurisdiction issues, "which call into question the very legitimacy of a court's adjudicatory authority." Id. The Court considered Duke's subject matter jurisdiction arguments (Duke's Mot. (Doc. 457) at 4-5) in note 1 above and in determining the application of the three circumstances. Therefore, this court will uphold it as the law of the case and decline Duke's invitation to

reopen summary judgment for further briefing.[9]

**IT IS HEREBY ORDERED** that Defendant's Motion for Leave to File Supplemental Motion for Summary Judgment (Doc. 457) is **DENIED**.

This the 17th day of September, 2014.

_____
United States District Judge

---

[9] At the April 4, 2014 motions hearing, this court directed the parties to file supplemental briefs addressing the applicability of the so-called "waiver doctrine," a corollary to the law of the case doctrine that requires a party to raise appealable issues at the first opportunity or risk losing the ability to re-visit them. See, e.g., Med. Ctr. Pharmacy v. Holder, 634 F.3d 830, 834 (5th Cir. 2011) ("[T]he waiver doctrine . . . holds that an issue that could have been but was not raised on appeal is forfeited and may not be revisited by the district court on remand."). Having reviewed the parties' briefs, this court finds that Duke did not run afoul of the waiver doctrine by failing to appeal the Duke I decision in 2003 because Duke, as the prevailing party on its motion for summary judgment, did not have an affirmative duty to argue alternative grounds for affirmance at the appeal. See Schering Corp. v. Ill. Antibiotics Co., 89 F.3d 357, 358 (7th Cir. 1996) ("We . . . agree that the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver[,] [because] [t]he urging of alternative grounds for affirmance is a privilege rather than a duty."); see also Crocker v. Piedmont Aviation, Inc., 49 F.3d 735, 741 (D.C. Cir. 1995) (counseling courts to apply "a degree of leniency in applying the waiver rule to issues that could have been raised by appellees on previous appeals"). Therefore, this court will not discuss the waiver doctrine in any detail here.